In the Matter of Rose Rosenbloom, Appellant, against Harry B. Crowley et al., Constituting the Board of Appeals of the Incorporated City of Rochester, Respondents, and Lincoln Rochester Trust Company et al., Intervenors-Respondents.

Fourth Department, January 14, 1959.

*Joseph Kaufman* for appellant.

*Honora A. Miller* for respondents.

*Nixon, Hargrave, Devans & Dey* (*Daniel G. Kennedy* of counsel), for intervenors-respondents.

WILLIAMS, J. This is an appeal from an order of Special Term which confirmed a determination of the Zoning Board of Appeals of the City of Rochester and dismissed petitioner-appellant's application to annul such determination. The Board of Appeals had approved an application for a permit for a parking lot in a residential district.

The petitioner is the owner of real estate which adjoins the lot for which the permit was granted. The intervenor-respondent bank has an option to purchase the lot in question and will own and operate the parking lot if the determination of the Zoning Board is affirmed. The members of the Board of Appeals are defendants-respondents.

Both petitioner's property and the lot in question are now, and for some time have been, used as private residences in an R-3 residential district. A parking lot is not a conforming use in such district and may be permitted by the Zoning Board of Appeals only upon certain conditions and requirements specified in section 91-17D of the Zoning Ordinance. It is under this section of the ordinances that the Zoning Board of Appeals approved the application.

The pertinent portions of section 91-17D are as follows:

" D. The establishment and operation of a restricted accessory parking area may be authorized by the Board as a special exception use, in such parts of an ' R-2 ', ' R-3 ', or ' R-5 ' district as abut, either directly or across an alley, any ' B ' or ' M ' district, or any institutional building non-conforming in the particular ' R ' district, subject to the following conditions and requirements:

" 1. The parking lot shall be accessory to and for use in connection with one or more business or industrial establishments located in and adjoining a ' B ' or ' M ' district, or in connection with one or more existing institutional buildings on adjoining premises.

" 2. Such parking lot shall have an area of not less than six thousand (6000) square feet and shall abut at least fifty (50) feet, either directly or across an alley, on a ' B ' or ' M ' district, or on the premises of the existing institutional building to which the parking lot is accessory.

* * *

"9. The Board may modify the foregoing requirements in specific cases where desirable or warranted, owing to unusual topography or other physical conditions and the use and character of adjacent properties, with due regard to the protection of such properties, the residence district in which the parking lot is to be located, and the public interest. The Board may also impose such additional requirements as it may deem necessary in view of the aforesaid consideration."

It should be noted that the introductory paragraph of the section defines a restricted accessory parking area as a " special exception use." Paragraph 50 of section 91-4 of the ordinance defines a " special exception " as "A use, not usually and ordinarily permitted within a district, which may be authorized by the Board, provided such use will serve the public convenience and welfare in accordance with the general or specific conditions and safeguards therein contained and any additional conditions and safeguards which may be imposed by the Board to protect the appropriate use of neighboring property."

Construing these two sections together, as we must, it appears that a restricted accessory parking area may be established as a special exception use in an R-3 district in the board's discretion, if the applicant can meet the preliminary conditions and requirements enumerated both in paragraph 50 of section 91-4 quoted above, and also in paragraphs 1 to 8 of section 91-17D. If the conditions and requirements of such paragraphs cannot be met, the board may still, in its discretion, determine whether the requirements of paragraphs 1 to 8 may be modified, but only upon the conditions and subject to the limitations specified in paragraph 9 of such subdivision D.

The applicant has met all the conditions and requirements except those set forth in paragraph 2. This presents a serious problem as paragraph 2 requires a lot of not less than 6,000 square feet in area and the lot in question is of less than the specified footage. It also requires that the proposed parking lot " abut at least fifty (50) feet, either directly or across an alley, on a ' B ' or ' M ' district, or on the premises of the existing institutional building to which the parking lot is accessory." Actually, this lot abuts at the rear upon the intervenor's premises which are in a " B " district, for a distance of only 15 feet, so that neither of the requirements was met.

Before the board could have the power and authority to modify the specifications of paragraph 2, it would have to find facts, adequately substantiated, showing valid reasons for such modification under paragraph 9. That paragraph provides for

modification " in specific cases where desirable or warranted, owing to unusual topography or other physical conditions and the use and character of adjacent properties, with due regard to the protection of such properties, the residence district in which the parking lot is to be located, and the public interest." It will be seen that there may be no modification by the board unless it is desirable or warranted " owing to unusual topography or other physical conditions *and* the use and character of adjacent properties " (italics added). The lot in question presents no unusual topography or physical conditions; it is merely a level, rectangular, normal city lot. Nor is modification desirable or warranted owing to " the use and character of adjacent properties ". Both adjoining properties are private residences.

After a hearing, at which it was contended by those favoring the application that the proposed parking lot would benefit the neighborhood generally and would alleviate serious traffic congestion, the board found, among other things, that the intervenor was confronted with " practical difficulties in reference to area," citing the failure to meet the area and abutting requirements as the reason for such failure; that the intervenor's present parking facilities were not adequate to accommodate its employees and customers; that the granting of the application would not decrease values of other neighborhood properties; that the proposed use would not create or induce any condition of unusual noise nor would it be detrimental to the quiet and peace of the neighborhood; and that the proposed parking lot would be consistent with public health, morals, safety and general welfare and in harmony with the general purposes and intent of the Zoning Ordinance. Nowhere is there a finding that there are any unusual topographical or other physical conditions, nor that modification was desirable or warranted owing to the use and character of adjacent properties.

The petitioner-appellant contends that the determination of the board must be disaffirmed because no " hardship " has been shown within the meaning of *Matter of Otto* v. *Steinhilber* (282 N. Y. 71) ; *Matter of Crossroads Recreation* v. *Broz* (4 N Y 2d 39), and *Matter of Gerling* v. *Board of Zoning Appeals* (6 A D 2d 247), and that therefore the exception was granted improperly. Another section of the Zoning Ordinance (§ 91-21, III-3) provides that the board may vary or modify any of the provisions of the ordinance in the interests of substantial justice " when and only when there are practical difficulties or unnecessary hardship in the way of carrying out the strict letter "

of the ordinance. In this connection, we want to point out that the board did not purport to act under this latter section, and that "hardship" is not a factor in this case, but in any event, the record would not substantiate a finding of "unnecessary hardship," nor does it substantiate the finding which was made, of "practical difficulties" (*Otto* case, *supra*).

Zoning boards are created by local ordinances. Their powers are derived from and must be found in such ordinances. There was no general power in this Board of Appeals to grant such a special exception use, but the board was limited to the powers specifically granted by the ordinance or reasonably to be implied therefrom.

"The power to grant in a specific case a variation or dispensation from a provision of a zoning ordinance is subject to express limitations and to limitations clearly implicit in the ordinance. * * * It [the Zoning Board of Appeals] may not destroy the general restriction by piece-meal exemption of pieces of land equally subject to the hardship created in the restriction, nor arbitrarily grant to an individual a special privilege denied to others." (*Matter of Levy* v. *Board of Stds. & Appeals,* 267 N. Y. 347, 352, 353–354.)

If a district is to be rezoned, it must be rezoned by the appropriate legislative municipal body and not by a zoning board, and whether or not a zoning board agrees with a classification established by a planning commission or other appropriate legislative body is of no consequence (*Matter of Chad Homes* v. *Board of Appeals, Rochester,* 5 Misc 2d 20, 24). The findings, even had they been supported, that the intervenor has practical difficulties and that the establishment of this parking lot will be beneficial generally for the various reasons stated by the board, afford no legal basis to support the determination which was made under section 91-17D.

For these reasons, the order of Special Term confirming the determination of the board should be reversed, the determination of the board annulled and the matter remitted to the board for further proceedings not inconsistent with this opinion.

All concur. Present — McCurn, P. J., Williams, Bastow, Goldman and Halpern, JJ.

Order reversed on the law and facts and determination of the Board of Appeals annulled, with $50 costs and disbursements.